# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILSON CHOUEST,<br><br>　　　　Petitioner,<br>　vs.<br><br>DERRAL ADAMS, Warden, California Substance Abuse Training Facility,<br><br>　　　　Respondent. | CASE NO. 1:07cv1427-IEG(AJB)<br><br>Order Denying Petition for Writ of Habeas Corpus |

Petitioner Wilson Chouest, a state prisoner proceeding by and through counsel, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging the California Board of Parole Hearings' July 6, 2005 decision rescinding a prior Panel's grant of parole. Petitioner argues the Board's decision rescinding his parole was not supported by "some evidence" and thus violated his right to due process under the Fourteenth Amendment. Respondent has filed an Answer and Petitioner has filed a Traverse.

Upon review of all the materials submitted, for the reasons set forth herein, the Court DENIES the petition.

## *Procedural History*

On November 13, 1980, Petitioner was convicted in the Tulare County Superior Court of kidnaping with the intent to commit robbery, robbery, and rape by threat. The court sentenced Petitioner to an indeterminate sentence of life with the possibility of parole. [Answer, Exhibit A (Abstract of Judgment-Commitment).] Petitioner does not challenge this conviction and sentence

in his current petition.

Following his sixth parole hearing on September 29, 2004, a Panel of the Board of Parole Hearings found Petitioner suitable for parole. [Petition, Exhibit 1, p. 43.] On January 12, 2005, the Governor exercised his discretion to request an *en banc* hearing due to concerns he had with the Panel's decision. [Petition, Exhibit 2.] On March 8, 2005, the full Board sitting *en banc* voted to schedule a Parole Rescission Hearing. Another Panel of the Board held a rescission hearing on July 6, 2005, after which it rescinded Petitioner's grant of parole. The rescission Panel directed that the case be referred back to the next available calendar of a Panel of the Board for a new hearing to consider additional issues regarding the gravity of the offense.[1] [Petition, Exhibit 4.] The Panel's decision became final on November 3, 2005. [Petition, Exhibit 5.]

On September 11, 2006, Petitioner filed a petition for a writ of habeas corpus in the Tulare County Superior Court challenging the Board's rescission of his parole. [Answer, Exhibit E.] The Superior Court denied the petition on September 14, 2006. [Petition, Exhibit 7.] Petitioner then filed a petition for a writ of habeas corpus in the California Court of Appeal on October 23, 2006, raising the same due process claim. [Answer, Exhibit G.] The Court of Appeal denied Petitioner's claim on November 14, 2006. [Petition, Exhibit 8.] Petitioner then filed a petition for a writ of habeas corpus in the California Supreme Court on December 6, 2006. [Answer, Exhibit I.] That petition was denied on May 23, 2007. [Petition, Exhibit 9.]

The current petition was timely filed on September 13, 2007.

### *Factual Background*

On September 4, 1980, Petitioner, armed with a knife, kidnaped, robbed and raped Rhoda H. Petitioner approached the victim as she sat in her car at the College of the Sequoias. Petitioner was holding a knife in his right hand and motioned with the knife, ordering the victim to scoot over to the passenger seat. Petitioner got into the driver's seat and shut the door. He then demanded the victim's money and took $10 from her purse. Petitioner started the car and drove to a shopping center parking lot, where he bound the victim's hands behind her back with tape.

---

[1] There is nothing in the record to indicate whether this subsequent hearing was held or the outcome of such hearing.

Petitioner removed the victim's clothing from the waist down and fondled her. Petitioner then started the car again and drove to the countryside. While he was driving, Petitioner ordered the victim to orally copulate him, which she did. Petitioner pulled off the road into a cornfield where he raped the victim. He then drove the victim back to the college, got out of the car, and walked away. [Indeterminate Sentence Parole Release Review, Petition, Exhibit 2.]

A few days before his attack upon Rhonda H., Petitioner robbed another victim, Rochelle S., on the same college campus and also while armed with a knife. [Id.] Three years prior to his attack upon Rhonda H. and Rochelle S., in 1977, Petitioner attacked and raped another woman in a similar manner. He was arrested for that attack and pled guilty to kidnaping and assault by force likely to produce great bodily injury. Petitioner was sentenced to four years in prison for this prior assault. [Id.]

All of this information was before the original Panel at Petitioner's sixth parole hearing on September 29, 2004, along with information regarding Petitioner's rehabilitation during his time in prison. Upon review of all the information before it, the original Panel concluded Petitioner was not a threat to public safety and was, therefore, suitable for parole. [Petition, Exhibit 1, p. 43.] The Panel noted Petitioner committed his crime 24 years before, while he was 20 years old. [Id., p. 44.] The Panel looked at Petitioner's programming history while in prison, noting he participated in educational programs, self-help and vocational programs, and job assignments including vocational training. Petitioner had been involved in AA and NA, as well as the Breaking Barriers conflict resolution program and Lifeskills pre-release orientation. Petitioner completed his GED and received positive work chronos and also participated in volunteer work. [Id.] The Panel noted Petitioner had realistic parole plans with the Victory Outreach program, and had close family ties. [Id., p. 45.] Petitioner had a minimal disciplinary history while incarcerated. [Id., pp. 45-46.] The Panel noted the recent psychological evaluation was very positive, indicating Petitioner showed remorse, understood the nature and magnitude of the offense, took responsibility for his behavior, and had a less than average risk of dangerousness. [Id. at 47-48.] Based on all these factors, the original Panel concluded that 24 years was a long enough sentence for the crimes Petitioner committed, and granted parole. [Id., p. 50-51.]

On January 15, 2005, the Governor exercised his discretion to refer the case to the Board of Prison Terms for *en banc* consideration of the decision to grant Petitioner parole. [Petition, Exhibit 2.] The Governor noted that although the psychological evaluation upon which the original Panel relied was positive, there were two reports from Life Prisoner evaluators in 2002 and 2003 that concluded Petitioner would pose a "moderate" degree of risk or threat if released. [Id., p. 2.] The Governor noted the gravity of the offense, concluding that factor alone was reason to conclude Petitioner was currently unsuitable for parole. In addition, the Governor noted one inconsistency in the Panel's reasoning. Commissioner Angele made a point of commenting during the original hearing that Petitioner was only a 20-years old "kid" at the time of the crime; in fact, Petitioner was 28-years-old at the time. [Id., pp. 2-3.]

On March 8, 2005, in response to the Governor's request, the full Board sitting *en banc* voted to schedule a parole rescission hearing for the purpose of determining whether the original Panel improvidently granted parole. [Petition, Exhibit 4, p. 6.] On July 6, 2005, another Panel held a parole rescission hearing. The rescission Panel identified six issues which could support a determination that good cause existed to rescind the grant of parole: (1) the gravity of the commitment offense, (2) the inmate's criminal history, (3) institutional disciplinary history, (4) public safety assessments, (5) inmate's parole plans, and (6) opposition to parole. In addition to the information before the original granting Panel, the rescission Panel received comments from Rhonda H.'s husband, the victim of Petitioner's 1977 attack, and the District Attorney, all with regard to the gravity of the commitment offense.

After hearing and deliberation, the rescission Panel determined there was good cause for rescission related to the gravity of the commitment offense.[2] [Petition, Exhibit 4, pp. 87-88, 90, 97.]

> It was clear that Mr. Angele did not know the inmate's age in discussions during the hearing. He thought that he was 20, and in fact he referred to him as a kid. So it was clear that he didn't consider the fact that he was not a 20-year old kid, he was actually a 28-year old man, at the time of the commitment offense. Also relating to the gravity of the offense, having the age wrong certainly impacts the gravity of the

---

[2]The rescission Panel found there was not good cause to rescind parole on any of the other five issues it identified, finding the original Panel properly considered each of these issues. [Id., pp. 88-90.]

> offense. Also, it's just not real clear, from the statements that were made during the hearing, whether or not the Board considered all of the factors that went into the commitment of this offense, related to how the victim was treated during the commitment of the offense. Whether or not they considered, in any real substantial way, whether this was, indeed, something that just sort of happened during the commission of a robbery, or if there was an indicating that there was going to be a rape.

[Id., pp. 87-88.] As a result, the rescission Panel referred the case back to the Board of Prison Terms to set a new hearing on the next available calendar to consider the issues of the gravity of the offense. [Id. 97.] In this case, Petitioner challenges the rescission Panel's finding that there was good cause to rescind his parole. He does not challenge any subsequent action the Board may have taken.

## *Legal Standard*

Pursuant to 28 U.S.C. § 2254, a federal court may grant a writ of habeas corpus only where the state court's adjudication of the matter was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or where the state court's determination was "based on an unreasonable determination of the facts in light of the evidence presented . . . ." 28 U.S.C. § 2254(d)(1) and (2).

A state court's decision may be found to be "contrary to" clearly established Supreme Court precedent: (1) "if the state court applies a rule that contradicts the governing law set forth in [the Court's] cases" or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent." Williams v. Taylor, 529 U.S. 362, 405-06 (2000); Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). A state court decision involves an "unreasonable application" of clearly established federal law, "if the state court identifies the correct governing legal rule from this Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or, "if the state court either unreasonably extends a legal principle from our precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 539 U.S. at 407; Andrade, 538 U.S. 63, 75-76.

"[A] federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law

erroneously or incorrectly. . . . Rather, that application must be objectively unreasonable."
Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003) (internal quotation marks and citations omitted).
Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the United
States Supreme] Court's decisions." Williams, 529 U.S. at 412; Andrade, 538 U.S. 63, 75-76; see
Smith v. Patrick, 508 F.3d 1256 (9th Cir. 2007) (discussing meaning of "clearly established federal
law").

### *Discussion*

Petitioner argues the rescission Panel's determination that there was "good cause" to rescind his grant of parole was not supported by "some evidence" and therefore violated his right to due process. The only reasoned decision on Petitioner's state court petitions is by the Tulare County Superior Court. [Petition, Exhibit 7.] That court, however, incorporated its prior decisions denying Petitioner's challenge to previous denials of parole, and did not address the question of whether there was good cause to support the rescission Panel's decision. Because there is no reasoned state court decision regarding the issue raised in the Petition, this Court must "independently review the record to determine whether the state court clearly erred in its application of Supreme Court law." Pirtle v. Morgan, 313 F.3d 1160, 1167 (9th Cir. 2002).

In determining whether a prisoner's due process rights have been violated, the Court must first determine whether there is a protected liberty interest with which the State has interfered. Hayward v. Marshall, 512 F.3d 536, 542 (9th Cir. 2008) (citing Kentucky Dept. of Corrections v. Thompson, 490 U.S. 454, 460 (1989)). The Court must then determine whether the State's procedures accompanying the interference with the prisoner's liberty interest were constitutionally sufficient. Id.

"[A] state's statutory scheme, if it uses mandatory language, 'creates a presumption that parole release will be granted' when or unless certain designated findings are made, and thereby gives rise to a constitutional liberty interest." McQuillion v. Duncan, 306 F.3d 895, 901 (9th Cir. 2002) (citing Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1 (1979) and Board of Pardons v. Allen, 482 U.S. 369 (1987)). The Ninth Circuit has held that "[u]nder the 'clearly established' framework of Greenholtz and Allen, ... California's parole scheme gives rise to a cognizable

liberty interest in release on parole." McQuillion, 306 F.3d at 902 (California state prisoners have a liberty interest in parole); Sass v. California Board of Prison Terms, 461 F.3d 1123, 1127-28 (9th Cir. 2006) (same); Biggs v. Terhune, 334 F.3d 910, 914 (9th Cir. 2003) ("Section 3041 of the California Penal Code creates in every inmate a cognizable liberty interest in parole which is protected by the procedural safeguards of the Due Process Clause.").

Because Petitioner has a liberty interest in parole, the Court must review the rescission decision of the Board to determine if such evidence was supported by "some evidence." McQuillon, 306 F.3d at 904 (citing Superintendent v. Hill, 472 U.S. 445, 456 (1985). Under California law, parole rescission proceedings take place in two phases:

> In the first phase, the panel determines only whether there is "good cause" to rescind the grant of parole. Cal. Code Regs. tit. 15, § 2450 (2000). If good cause is found, the panel moves to the second phase to determine whether, given that finding, the parole date should in fact be rescinded because an independent evaluation of the prisoner's suitability for parole so dictates. Cal. Code Regs. tit. 15, §§ 2467, 2281.

McQuillon, 306 F.3d at 899. "Good cause" for rescission of parole includes conduct enumerated in Cal. Code Regs. tit.15, § 2461, which sets forth the following three factors for the Board to consider:

> (1) any disciplinary conduct subsequent to the grant of parole, (2) psychiatric deterioration of the prisoner, and (3) new information indicating parole should not occur, such as an inability to meet a special condition of parole, information significant to the original grant of parole being fraudulently withheld from the Board, or fundamental errors which resulted in the improvident grant of parole.

In re Caswell, 92 Cal. App. 4th 1017, 1026 (2001). Where, as in this case, the petitioner challenges the Board's determination that there was "good cause" to rescind the grant of parole, the question for habeas review is whether the Board's determination of "good cause" is itself supported by "some evidence." McQuillon, 306 F.3d at 904. The "some evidence" standard requires only a "modicum of evidence" and may be met "if there was some evidence from which the conclusion of the [board] could be deduced." Hill, 472 U.S. at 455.

The "improvidently granted" ground for rescission, upon which the rescission Panel in this case relied, "has been read somewhat broadly by California courts." McQuillon, 306 F.3d at 904. "Among other things, under California law a rescission panel may rescind parole based on a finding that the granting panel 'failed to adequately consider' important factors already before it

when the grant was made." Id. (quoting Caswell, 92 Cal. App. 4th at 1027). Nonetheless, "the rescission panel may not find 'good cause' based on its own, differing assessment of facts that were thoroughly considered at the time of the grant." Id.

In this case, the rescission Panel determined there was "good cause" to rescind the grant of parole based upon Commissioner Angele's mistaken belief regarding Petitioner's age at the time of the crime as well as the original granting Panel's incomplete discussion of the gravity of the offense. Petitioner argues the rescission Panel's decision in this regard was not supported by "some evidence." Petitioner argues the original granting Panel incorporated the statement of facts from the 2003 Board Report and also had before it Petitioner's Central File containing all of the prior Board Reports, all of the prior psychological reports, and all of the police and probation reports detailing the crime. In addition, the original granting Panel discussed the crime with Petitioner during the hearing. [Petition, Exhibit 1, pp. 7-12, 31-33.] Petitioner points out that Mr. Angele, who made the misstatement about Petitioner's age at the time of the crime, was on the two previous hearing Panels in 2001 and 2002, such that he was quite familiar with the gravity of the offense. In fact, at the conclusion of the 2002 hearing, Mr. Angele wanted to ensure himself and the Board, out of concern for the gravity of the crimes, that Petitioner's pattern of victimizing women had been broken. [Petition, Exhibit 11.]

Upon review, the Court finds the rescission Panel's finding of "good cause" is supported by "some evidence." Petitioner correctly notes that the original granting Panel had before it all of the information regarding the nature of the offense. However, that Panel's discussion of the gravity of the offense was extremely limited. Aside from incorrectly noting Petitioner's age at the time of the offense, Mr. Angele noted the crimes were committed 24 years prior and stated the Panel "looked at the criminal offense itself and have explored it . . . ." [Petition, Exhibit 1, pp. 43-44.] Mr. Angele also noted the crime "was of a considerable distance and the victim was sexually assaulted" and that Petitioner "used a dangerous weapon during the commitment of the offense." [Id., p. 49.] Finally, Mr. Angele noted "I acknowledge that the offense includes degradation of the female victim." He went on to state, however, that "24 years is a long time and I don't believe what I've read in the file in regards to your discipline warrants an extended period of time." [Id.,

p. 51.] This is the complete extent of the original granting Panel's discussion of the gravity of the commitment offense. Furthermore, the original granting Panel made only the most cursory inquiry of Petitioner regarding the nature of the commitment offense. [Petition, Exhibit 4, pp. 7-11.] Although Petitioner notes that Mr. Angele was on his two prior Panels, Deputy Commissioner Armenta was not and thus did not have the benefit of hearing any discussion about the gravity of the offense which may have occurred at prior hearings.

As noted by the rescission Panel, not only was there a discrepancy regarding how old the original granting Panel believed Petitioner was at the time of the offense, but this discrepancy had an impact upon the original granting Panel's consideration of the gravity of the offense. [Petition, Exhibit 4, pp. 87-88.] As the rescission Panel noted "there is a definite difference between a, quote, '20 year old kid with a heroin habit' and a 28-year old man committing this kind of violent offense." [Id., p. 97.] The rescission Panel further noted the granting Panel did not even discuss the question of whether Petitioner initially intended to rape the victim as part of the crime, or whether the rape was something that "just happened" after Petitioner kidnaped and robbed the victim. In the very brief discussion between Petitioner and the original granting Panel, Petitioner again implied that he did not originally intend to rape the victim. [Id., p. 11.] The original granting Panel did not discuss this issue whatsoever, or its impact upon the gravity of the offense for purposes of considering Petitioner's suitability for parole.

This case is distinguishable from McQuillon, where the granting panel "addressed in detail" the nature and gravity of the commitment offense and the rescission panel simply did not "feel" that the original panel adequately considered the gravity of the offense. 306 F.3d at 906-07. Instead, in this case, Petitioner's original granting Panel addressed the gravity of the commitment offense in a very cursory manner, both in its discussions with Petitioner and in its decision. Part of this cursory discussion related to the incorrect assumption that Petitioner was a 20-year-old kid. [Petition, Exhibit 4, pp. 7-11.] The rescission Panel in this case made a "specific finding" regarding the granting Panel's mistaken belief regarding Petitioner's age at the time of the offense, and the impact of that mistake on the original granting Panel's evaluation of the gravity of the offense. Thus, there was some evidence supporting the rescission Board's determination there was

good cause to rescind the grant of parole. The state court's decision upholding the Board's decision to rescind parole was neither contrary to nor an unreasonable application of clearly established federal law.[3]

*Conclusion*

Upon a full review of the record, for the reasons set forth herein, the petition for a writ of habeas corpus is DENIED.

**IT IS SO ORDERED**.

DATED: May 14, 2009

**IRMA E. GONZALEZ, Chief Judge
United States District Court**

---

[3]The Ninth Circuit has cautioned on several occasions that the State's continued reliance upon an unchanging factors, such as the circumstances of the commitment offense, may at some point violate due process. See Biggs v. Terhune, 334 F.3d 910, 916 (9th Cir. 2003); Irons v. Carey, 505 F.3d 846, 854 (9th Cir. 2007). This Court is concerned that at some time in the very near future, the Board's continued reliance upon the Petitioner's commitment offense could violate his right to due process. That issue, however, is not properly before this Court.